IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| TL ENTERPRISES, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION |
| v. ) | |
| ) | No. 11-2212-KHV |
| HAES CONTRACTING, INC. and ) | |
| DEVELOPERS SURETY AND ) | |
| INDEMNITY COMPANY, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

**MEMORANDUM AND ORDER**

Plaintiff brings this diversity action alleging breach of contract against Haes Contracting, Inc. ("Haes") and breach of performance bond against Developers Surety and Indemnity Company ("Developers"). Plaintiff alleges that Haes entered into a subcontract to perform dredging and other work on a construction project, that Developers executed a performance bond on the Haes subcontract, and that neither defendant performed its respective obligations. This matter is before the Court on Defendant Haes Contracting Inc.'s Motion To Transfer (Doc. #12) filed July 7, 2011 and Defendant Developers Surety And Indemnity Company's Motion To Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2) (Doc. #14) filed July 8, 2011. Under 28 U.S.C. § 1404(a), Haes asks the Court to transfer this case to the United States District Court for the Southern District of Iowa, Western Division, which Haes contends is a more convenient forum. Under Rule 12(b)(2), Developers seeks dismissal for lack of personal jurisdiction. For the reasons stated below, the Court sustains both motions.

1

**I.     Motion To Dismiss**

Because Developers challenges personal jurisdiction, the Court addresses its motion to dismiss before considering Haes's transfer request.

**A.  Legal Standards**

Rule 12(b)(2), Fed. R. Civ. P., governs motions to dismiss for lack of personal jurisdiction. Plaintiff bears the burden of establishing personal jurisdiction and at this stage of the litigation need only make a prima facie showing. Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d 1063, 1069-70 (10th Cir. 2008). Plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant. TH Agric. & Nutrition, LLC v. Ace European Grp. Ltd., 488 F.3d 1282, 1286 (10th Cir. 2007). To the extent they are uncontroverted, the Court must accept the well-pleaded allegations of the complaint. Wenz v. Memery Crystal, 55 F.3d 1503, 1505 (10th Cir. 1995). If the jurisdictional allegations are challenged by an appropriate pleading, plaintiff has the duty to support its jurisdictional allegations by competent proof of supporting facts. Pytlik v. Prof'l Res., Ltd., 887 F.2d 1371, 1376 (10th Cir. 1989). The Court resolves any factual disputes in plaintiff's favor. Wenz, 55 F.3d at 1505.

**B.  Factual Background**

Viewed in the light most favorable to plaintiff, the complaint and record evidence are summarized as follows:

This case involves a dispute regarding a construction project in Iowa. Plaintiff is a Kansas corporation with its principal place of business in Garnett, Kansas. Haes is a Nebraska corporation with its principal place of business in Nebraska. Developers is an Iowa corporation with its principal place of business in California.

In 2009, the U.S. Army Corps of Engineers (the "Corps") awarded plaintiff the general contract for a construction project located in Iowa along the Missouri River. In October of 2009, plaintiff subcontracted with Haes to provide dredging and other work for the project. The subcontract identifies plaintiff's place of business as Garnett, Kansas. Developers executed a performance bond on the subcontract, naming Haes the principal and plaintiff the obligee. The performance bond identifies plaintiff's principal place of business as Garnett, Kansas and incorporates the terms of the subcontract between plaintiff and Haes.

Haes began performing work under the subcontract. Plaintiff quickly became dissatisfied with its performance, finding that Haes did not comply with the construction schedule or provide adequate equipment or workers with sufficient experience. At least three times, plaintiff provided written notice of purported performance failures under the subcontract and in May of 2010, terminated the subcontract. It then made a demand to Developers under the surety bond to remedy the default or arrange for Haes's performance obligation. Developers denied the demand, disputing the grounds upon which plaintiff terminated the subcontract. Plaintiff performed the work itself and now seeks reimbursement from Haes and Developers.

While investigating the demand on the performance bond, a representative of Developers who lives and works in Kansas visited the office of TL Enterprises in Garnett, Kansas, and traveled to the project site in Iowa. Developers also sent letters, faxes and emails to, and participated in telephone conferences with, individuals in the Garnett, Kansas office of TL Enterprises.

### C. Analysis

Developers contends that this court lacks both general and specific personal jurisdiction and it must therefore be dismissed.

In a federal diversity case, the law of the forum state – here, Kansas – determines the court's jurisdiction over Developers. Fed. R. Civ. P. 4(e); Marcus Food Co. v. DiPanfilo, No. 10-3285, 2011 WL 5084997, at *3 (10th Cir. Oct. 27, 2011). To establish jurisdiction, plaintiff must show two things: first, that the Kansas long-arm statute contemplates the exercise of jurisdiction; and second, that jurisdiction comports with the due process requirements of the Fourteenth Amendment.[1]  Id.  The Kansas long-arm statute is construed liberally to allow jurisdiction to the full extent permitted by due process, which means that the Court need not

---

[1] Plaintiff asserts jurisdiction based on the following portions of the Kansas Long-Arm Statute:

> (1) Any person, whether or not a citizen or resident of this state, who in person or through an agent or instrumentality does any of the following acts, thereby submits the person and, if an individual, the individual's representative, to the jurisdiction of the courts of this state for any claim for relief arising from the act:
>     (A) Transacting any business in this state; . . .
>     (D) contracting to insure any person, property or risk located in this state at the time of contracting; . . .
>     (G) causing to persons or property within this state an injury arising out of an act or omission outside this state by the defendant if, at the time of the injury, either:
>         (i) the defendant was engaged in solicitation or service activities in this state; or
>         (ii) products, materials or things processed serviced or manufactured by the defendant anywhere were used or consumed in this state in the ordinary course of trade or use; or . . .
>     (L) having contact with this state which would support jurisdiction consistent with the constitutions of the United States and of this state.
>
> (2) A person submits to the jurisdiction of the courts of this state for a claim for relief which did not arise in this state if substantial, continuous and systematic contact with this state is established which would support jurisdiction consistent with the constitutions of the United States and of this state.

K.S.A. § 60-308(b).

conduct a statutory analysis apart from the due process analysis. Id.; Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc., 618 F.3d 1153, 1159 (10th Cir. 2010).

The due process analysis is two-fold. First, plaintiff must show that Developers has "minimum contacts" with Kansas by demonstrating that it "purposefully availed" itself of the protections or benefits of the state's laws and "should reasonably anticipate being haled into court []here." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 473-76 (1985); see also Emp'rs Mut. Cas. Co., 618 F.3d at 1159-60 (reiterating Burger King standard). Plaintiff can meet this standard by demonstrating either specific or general jurisdiction. OMI Holdings, Inc. v. Royal Ins. Co. of Canada, 149 F.3d 1086, 1090-91 (10th Cir. 1998). The Court may exercise specific personal jurisdiction if this case arises directly from or relates to Developer's Kansas-related activities. Id. at 1091. It may exercise general personal jurisdiction if Developers otherwise maintains "continuous and systematic" general business contacts with Kansas. Id.

Then, if Developers has the requisite minimum contacts with Kansas, the Court proceeds to the second step in the due process analysis: ensuring that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice. See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 (1980). At this stage, the burden shifts to Developers to present a compelling case that other considerations would render jurisdiction unreasonable. See Dudnikov, 514 F.3d at 1080. This prong evokes a sliding scale: the weaker plaintiff's showing on minimum contacts, the less Developers needs to show in terms of unreasonableness. TH Agric. & Nutrition, LLC, 488 F.3d at 1292. Here, plaintiff argues that the Court has both specific and general jurisdiction over Developers.

    1. **Minimum Contacts**

        a.  **Specific Jurisdiction**

5

Plaintiff claims that Developers is subject to personal jurisdiction under the Kansas long-arm statute because it: (A) transacted business in this state; (D) contracted to insure a person, property or risk located in this state at the time of contracting; (G) caused to persons or property within this state an injury arising out of an act or omission outside this state because at the time of the injury: (i) defendant was engaged in solicitation or service activities in this state; or (ii) products, materials or things processed serviced or manufactured by defendant anywhere were used or consumed in this state in the ordinary course of trade or use; or (L) had contact with this state which would support jurisdiction consistent with the constitutions of the United States and of this state.  See K.S.A. § 60-308(b).  Plaintiff cites the following evidence in support of specific jurisdiction:  Developers (1) wrote a performance bond which named plaintiff – at its Garnett, Kansas office – the obligee and (2) conducted some of its investigation into plaintiff's claim in Kansas, including sending its representative – who offices in Wichita – to plaintiff's office in Garnett, participating in telephone calls with plaintiff and sending letters to plaintiff's office in Garnett.  Plaintiff does not indicate how such evidence supports an argument for specific jurisdiction under the statute on which it relies.

Developers argues that it is not subject to specific personal jurisdiction because (1) the surety bond which it issued does not relate to any activities in Kansas and (2) this cause of action does not arise out of any purposeful activities of Developers in Kansas.  Specifically, Developers argues that Haes (a Nebraska corporation) purchased the bond to insure its performance of a subcontract in Iowa and plaintiff demanded that Developers perform under the bond in Iowa.

First, to the extent plaintiff claims that Developers is subject to specific jurisdiction because it investigated plaintiff's performance bond and thus "transacted business" here, W. Fuels Ass'n, Inc. v. Mobil Coal Producing, Inc., No. 88-1361-K, 1989 WL 8052, at *4 (D. Kan.

6

Jan. 24, 1989), holds otherwise.  In Western Fuels, the Court concluded that one negotiations meeting and one plant tour were insufficient to confer jurisdiction under the "transacting business" prong when the bulk of the parties' contract negotiations took place outside the state and defendant did not consummate a transaction in Kansas with respect to the contracts at issue. Similarly, the Court concludes that any contact Developers had with Kansas while investigating plaintiff's surety bond claim was de minimus, and the facts do not show that Developers consummated a transaction in Kansas which involved the contracts at issue here.  Thus, Developers is not subject to specific jurisdiction under K.S.A. § 60-308(b)(1)(A).[2]

Plaintiff makes no attempt to explain how Developers' actions involve contracting to insure any person, property or risk located in Kansas at the time of contracting (K.S.A. § 60-308(b)(1)(D)), tortiously injuring a person or property within Kansas (K.S.A. § 60-308(b)(1)(G)) or having contact with this state which would support jurisdiction consistent with the constitutions of the United States and of this state ((K.S.A. § 60-308(b)(1)(L)).  Given plaintiff's prima facie burden, the Court will not presume to construct arguments for it.  Thus the Court cannot conclude that Developers is subject to specific personal jurisdiction.

### b.  General Jurisdiction

Developers argues that the Court lacks general jurisdiction because it is not incorporated in Kansas and has no principal place of business in Kansas.  Plaintiff counters that Developers

---

[2] Finally, plaintiff does not appear to rely on K.S.A. § 60-308(b)(1)(E), which extends long arm jurisdiction over non-residents who enter into contracts with Kansas residents or which are to be performed in Kansas.  However, to the extent plaintiff attempts to  make a contract-based claim that Developers is subject to specific jurisdiction by virtue of the performance bond which it executed with Haes, Smith & Loveless, Inc. v. Caicos Corp., No. 04-2384-JPO, 2005 WL 1533116, at *5 (D. Kan. June 29, 2005) holds otherwise.  When a third-party beneficiary is the only Kansas connection to a surety agreement between two non-Kansas residents which relates to a project in another state, the Kansas long-arm statute does not confer specific jurisdiction over the surety.  Id.; K.S.A. § 60-308(b)(1)(E).

conducts regular extensive business in Kansas because (1) three surety agents in Johnson County, Kansas have sold surety bonds for either Developers or an entity called "Insco-Dico;"[3] (2) Developers belongs to the Surety Association of Kansas City of Overland Park Kansas; and (3) more than 150 agents or agencies in Johnson County, Kansas offer to write bonds of Developers. Developers responds with affidavit testimony that (1) of Developers' $50 million in premium sales in 2010, only 0.002 per cent occurred in Kansas; (2) the 150 agents authorized to sell Developers products also sell products from multiple companies and are not exclusive agents for Developers; and (3) the Surety Association of Kansas City is a professional organization which is not Kansas-specific but rather covers the Kansas City metropolitan area, and no legal basis exists for imputing personal jurisdiction based on membership in an organization like this.

In Martin-Manatee Power Partners, LLC v. Peerless Mfg. Co, 44 Kan. App. 2d 75, 81, 233 P.3d 758, 763 (Kan. App. 2010), the Kansas Court of Appeals analyzed the subsection of the Kansas long-arm statute which governs general personal jurisdiction. K.S.A. § 60-308(b)(2). In Martin Manatee, the Kansas Court of Appeals examined the following factors to determine whether the district court properly dismissed a Florida entity for lack of general personal jurisdiction:

> (1) Whether the corporation solicits business in the state through a local office or agents; (2) whether the corporation sends agents into the state on a regular basis to solicit business; (3) the extent to which the corporation holds itself out as doing business in the forum state through advertising, listings or bank accounts; and (4) the volume of business conducted in the state by the corporation.

---

[3] Plaintiff does not explain why it references an entity called "Insco-Dico" or why it matters that surety agents in Kansas have sold surety bonds for it. It is impossible to tell from the evidence attached to plaintiff's brief whether these surety agents actually sold bonds for Developers. Plaintiff also argues that Insco-Dico wrote $109,004.00 in direct premiums in 2010 in Kansas, but again does not explain why that matters in this case.

Id (internal quotations omitted). The district court had concluded that under these factors, it lacked general personal jurisdiction because defendant (1) was not registered as a foreign corporation doing business in Kansas; (2) was not obligated to pay taxes in Kansas; (3) did not maintain a bank account in Kansas; (4) did not have an office or registered agent in Kansas; (5) did not own or lease any real property in Kansas; and (6) over a 5-year period engaged in only 28 transactions in which one of its products was shipped into Kansas. The Kansas Court of Appeals affirmed the district court, finding that the dismissed defendant had not "engaged in a level of business activity in Kansas" which was sufficiently "substantial, continuous and systematic" to support jurisdiction. Id.

In this case, while plaintiff has shown that agents in Kansas are authorized to sell surety bonds for Developers, they have not provided any evidence of the number or volume of Kansas transactions which have specifically involved Developers. Developers has no exclusive agents in Kansas, and plaintiff has not shown whether – or the extent to which – Developers regularly solicits business in Kansas. Plaintiff has provided no evidence that Developers holds itself out as doing business in Kansas through advertising, listings or bank accounts. Finally, the volume of business in Kansas – 0.002 per cent of Developers' annual premium sales – is not significant. Thus, the Court concludes that plaintiff has not met its prima facie burden to show that Developers maintains continuous and systematic business contacts with Kansas.

In short, plaintiff has not shown that Developers has "minimum contacts" with Kansas by demonstrating that it "purposefully availed" itself of the protections or benefits of the state's laws and "should reasonably anticipate being haled into court []here." Burger King, 471 U.S. at 473-76. It therefore sustains Developers' motion to dismiss.

**II.     Motion To Transfer**

9

Under 28 U.S.C. § 1404(a), Haes asks the Court to transfer this case to the United States District Court for the Southern District of Iowa, Western Division.  Plaintiff opposes Haes's motion but does not dispute that the Southern District of Iowa would be a legally proper venue for this action.[4]

**A.  Legal Standards**

Under 14 U.S.C. § 1404(a), the Court may transfer a case to any district or division where it might have been brought for "the convenience of the parties and witnesses" and "in the interest of justice."  The decision whether to grant a motion to transfer is within the sound discretion of the district court.  See Scheidt v. Klein, 956 F.2d 963, 965 (10th Cir. 1992).  In deciding a motion to transfer, the Court considers the following factors: plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; the difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and all other considerations of a practical nature that make a trial easy, expeditious and economical.  Chrysler Credit Corp. v. Country Chrysler, Inc., 928 F.2d 1509, 1516 (10th Cir. 1991).

---

[4]  On September 19, 2011 plaintiff filed a surreply without leave of court.  See Doc. #24.  Under D. Kan. Rule 7.1(c), parties are permitted file a motion, a response and a reply.  Surreplies are typically not allowed.  Humphries v. Williams Nat. Gas Co., Case No. 96-4196-SAC, 1998 WL 982903, at *1 (D. Kan. Sept. 23, 1998).  Surreplies are permitted in rare cases, but not without leave of court.  See Metzger v. City of Leawood, 144 F. Supp.2d 1225, 1266 (D. Kan. 2001).  Haes's reply does not raise new issues or evidence which would permit the filing of a surreply.  The Court therefore will disregard plaintiff's surreply in analyzing defendant's motion to transfer.  Even if the Court were to consider the arguments in plaintiff's surreply, however, it would reach the same result on Haes's motion to transfer.

### B. Analysis

#### 1. Plaintiff's Choice Of Forum

Haes acknowledges that plaintiff's choice of forum is afforded "great weight" and that it thus bears the burden to prove that the facts weigh heavily in favor of transfer. Allstate Ins. Co. v. Emp'rs Reins. Corp., 715 F. Supp. 1502, 1503 (D. Kan. 1989); KCJ Corp. v. Kinetic Concepts, Inc., 18 F. Supp.2d 1212, 1214 (D. Kan. 1998). On this factor, Haes asks the Court to consider that before plaintiff filed this action, Haes sued plaintiff in the Iowa District Court for Harrison County, Iowa. Haes dismissed that case because it (erroneously, as it turns out) anticipated settlement.[5] Plaintiff does not address Haes's argument about the action which it filed in Iowa state court or the failed settlement. It simply asserts that this Court provides the most convenient forum for it and numerous witnesses, and states that it knows of no witnesses who office or reside in Iowa who would find trial more convenient in Iowa.

Plaintiff does not have an absolute right to litigate in its home district; rather, plaintiff's choice of forum is simply one factor for the Court to balance. Fahey v. Comair, No. 07-2002-KHV, 2007 WL 1299188, at *2 (D. Kan. May 3, 2007). The Court thus finds that this factor weighs modestly in favor of plaintiff and against transfer.

#### 2. Accessibility Of Witnesses And Other Sources Of Proof

Haes argues that this factor heavily favors transfer to the Southern District of Iowa because many potential witnesses who reside outside the subpoena power of this Court are subject to compulsory process in the Southern District of Iowa. Specifically, Haes notes that potentially hostile witnesses are located in or near the project site in Iowa, Omaha, Nebraska and

---

[5] On the same day it filed this motion, Haes sued plaintiff in the United States District Court for the Southern District of Iowa, case number 1:11-cv-00025-JAJ-TJS.

11

Lincoln, Nebraska, and are thus not within the 100 mile radius of this Court's subpoena power under Fed. R. Civ. P. 45 (b)(2)(B).  Haes also notes that the Iowa project site is the "locus of the activity" concerning plaintiff's allegations because the job site is located in Iowa, other evidence under the control of the Corps of Engineers is located in Omaha, and other witnesses are located closer to the Iowa project site.

Plaintiff counters that the key witnesses which it expects to call all live and work in Kansas, except one who lives in Colorado.  It also "strongly disagrees" with the way Scott Haes describes key witnesses in his affidavit.  Finally, plaintiff dismisses Haes's arguments about witnesses from the Corps of Engineers, arguing that the location of such witnesses is of little consequence since regulatory and legal restrictions often prevent Army Corps witnesses from testifying in private civil lawsuits.

This factor favors transfer. In particular, the Court is persuaded that various non-party witnesses are located in Iowa and Nebraska.  Moreover, plaintiff points to no non-party witnesses in Kansas who would be subject to subpoena in this forum but not in Iowa.  See, e.g., Westhampton Care, Inc. v. Law Co., Inc., 896 F. Supp. 1093, 1095 (D. Kan. 1995).

### 3.  Cost of Making The Necessary Proof

On this factor, Haes argues that the cost of litigating the cases will likely be greater in Kansas than Iowa because the locus of activity was in Iowa.  Haes argues that for both parties, the cost of bringing witnesses to Kansas will be greater than bringing them to Iowa.  Plaintiff disagrees, arguing that the "vast majority" of witnesses reside and live in Kansas.

The cost of bringing non-party witnesses to Kansas City appears greater than the cost of bringing party and non-party witnesses to Iowa.  This factor thus favors transfer.

### 4.  Enforceability Of Judgment

The parties agree that this factor is neutral because under 28 U.S.C. § 1963, a judgment awarded in either court is enforceable against the non-prevailing party.

### 5. Relative Advantages And Obstacles To A Fair Trial

Haes acknowledges that both courts will afford a fair trial to both parties, but argues that because this Court lacks subpoena power over potential witnesses, this factor weighs in favor of the Southern District of Iowa. Plaintiff counters that this is not a high profile case which involves extensive Kansas media coverage, inflammatory material or possible prejudice of a local jury, and that the parties can therefore obtain a fair trial in the District of Kansas. While the Court believes that either venue would afford a fair trial to both parties, this Court's lack of subpoena power over potential witnesses tips this factor in favor of transfer.

### 6. Difficulties That May Arise From Congested Dockets

On this factor, Haes presents evidence that in 2008, 2009 and 2010, the Southern District of Iowa (with six district judges), handled an average of 544 cases per year which took an average of 11 months to reach final disposition. During that same time period, the District of Kansas (with 10 district judges) handled an average of 1118 cases per year which took an average of 9 months to reach final disposition. Haes suggests that given the relative speed of disposition, this factor is neutral or slightly favors the District of Kansas, but acknowledges that the Court is in the best position to assess its docket. Plaintiff agrees that this factor is neutral or favors the District of Kansas, and the Court finds that this factor is neutral.

### 7. Conflicts Of Laws Questions

Haes argues that this factor weighs in favor of the Southern District of Iowa because the contract contains no choice of law provision. Thus, Haes argues that under Kansas choice of law principles, the District of Kansas would apply Nebraska law while under Iowa choice of law

principles, the Southern District of Iowa would apply Iowa law.  Plaintiff correctly notes that under 28 U.S.C. § 1404(a), the transferee court must apply the law of the transferor court, including the choice-of-law rules of the transferor state.  <u>Ferens v. John Deere Co.</u>, 494 U.S. 516, 516-17 (1990) (applying transferee law would undermine <u>Erie</u> doctrine because initiating Section 1404 transfer would change state law applicable in diversity cases).  In this case, then, either Court would apply the law of the State of Kansas to determine which state's substantive law to apply.  Under Kansas choice of law rules, both parties agree that Nebraska law probably applies.  On this record, no significant conflicts of law questions appear and the Court finds that this factor is neutral.

### 8.  Advantage Of Having Local Court Determine Questions Of Local Law

Haes argues that this factor weighs in favor of the Southern District of Iowa because it would apply Iowa law while this Court would apply Nebraska law.  As noted, however, Kansas choice of law rules apply whether the case remains here or is transferred to the Southern District of Iowa.  Under Kansas choice of law rules, it appears that Nebraska law probably applies to the dispute.  The Court thus finds that this factor is neutral.

### 9.  All Other Considerations

Haes argues that this factor, which requires the Court to consider matters which make a trial easy, expeditious and economical, weighs in favor of the Southern District of Iowa, and the Court agrees.  Haes has commenced a lawsuit in the United States District Court for the Southern District of Iowa which arises out of the same facts and involves the same issues and parties as this case. The interests of judicial economy would be served by having all the issues tried in the same court or perhaps even the same case.  <u>Westhampton Care</u>, 896 F. Supp. at 1095.

On balance, the Court finds that the relevant factors weigh in favor of transfer.

**IT IS THEREFORE ORDERED** that <u>Defendant Developers Surety And Indemnity Company's Motion To Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2)</u> (Doc. #14) filed July 8, 2011, be and hereby is **SUSTAINED.**

**IT IS FURTHER ORDERED** that <u>Defendant Haes Contracting Inc.'s Motion To Transfer</u> (Doc. #12) filed July 7, 2011 be and hereby is **SUSTAINED**. Under 28 U.S.C. § 1404(a), the Clerk is directed to transfer this matter to the United States District Court, Southern District of Iowa, Western Division at Council Bluffs.

Dated this 20th day of March, 2012 at Kansas City, Kansas.

<u>s/ Kathryn H. Vratil</u>
KATHRYN H. VRATIL
United States District Judge